560 A.2d 260

**In re GENERAL ELECTION, NOVEMBER 8, 1988.**

**Appeal of REPUBLICAN STATE COMMITTEE OF PENNSYLVANIA and Republican Executive Committee of Allegheny County.**

Commonwealth Court of Pennsylvania.

Argued May 3, 1989.

Decided June 9, 1989.

Robert L. Byer, Eckert, Seamans, Cherin & Mellott, Pittsburgh, for appellant, Republican State Committee of Pennsylvania.

Arthur H. Stroyd, Jr., Reed, Smith, Shaw & McClay, for appellant, Republican Executive Committee of Allegheny County.

Allan J. Opsitnick, Asst. County Sol., James J. Dodaro, County Sol., Allegheny County Law Dept., Pittsburgh, for appellee, Allegheny County.

Before CRUMLISH, Jr., President Judge, and CRAIG, DOYLE, BARRY, PALLADINO, McGINLEY and SMITH, JJ.

CRAIG, Judge.

In view of the statute which prohibits voter registration during the thirty-day period preceding each election day, except as to electors unregistered because of circumstances beyond their control, may the judiciary grant election officials of a particular county a blanket authorization to register over 4700 voters who merely failed to present registration applications in time?

Because the courts have no power to amend statutory mandates enacted by the legislature, the answer must be negative.

This appeal, by the Republican State Committee and Republican Executive Committee of Allegheny County as appellants, is from an order of the Court of Common Pleas of Allegheny County which granted to the Allegheny County Director of Elections special authority to register over 4700 voters whose untimely applications the department had received in the mail after the October 11, 1988 voter registration deadline applicable to the November 8, 1988 general election.

Section 16(a) of the Permanent Registration Act, Act of April 29, 1937, P.L. 487, *as amended,* 25 P.S. § 951–16(a), prohibits voter registration during "the thirty days next preceding each general, municipal and primary election...." Also, under section 17.1(a)(3), 25 P.S. § 951–17.1(a)(3), mail registration procedures include a provision that the official mail registration form must state that election officials have to receive the mail registration card "at least thirty days prior to the ensuing primary or election at which the applicant may offer to vote."

The only provision in the Act for nunc pro tunc registration authorization by a court is in section 28.1, 25 P.S. § 951–28.1, which first requires the court of common pleas to be in continuous session on primary and election days, during the period the polls are open, and then states:

During such period said court shall hear and determine (1) the petition of any qualified elector who has hereto-

fore been duly registered as an elector of said county but who, *due to circumstances beyond his control,* has failed to file a removal notice or reinstatement card in order to insure the inclusion of his registration card in the district register of the election district of his residence, ... (3) the petition of any qualified elector who is a duly discharged veteran and who, by reason of his service in the armed forces, was unable to register within the time fixed by law, and (4) the petition of any [election official] setting forth that the right to vote of the particular elector has been denied by reason of an error by the registration commission. (Emphasis added.)

Thus, in addition to a provision allowing a physically disabled voter to obtain a late entry on his registration card as to an impairment causing his need for voting assistance, the only exceptions to the registration deadline relate to:

—previously registered electors who failed to file a removal notice or reinstatement card due to circumstances beyond their control;

—armed forces personnel unable to register by reason of being in the service; and

—electors denied registration by errors of registration officials.

Section 38 of the Act, 25 P.S. § 951–38, also repeats the first exception listed above.

The Allegheny County elections director submitted to the trial court a petition stating that approximately 5000 registrations were received after the deadline, that the voters would suffer "hardship" if denied the ability to vote solely because of late receipt of their registration form, that there would be no substantial harm or excessive cost, that no party or candidate would be prejudiced, and that the court therefore was requested to issue an order requiring the department to process all valid registration forms received after the deadline date of October 11 up through October 29, 1988, with respect to the election of November 8, 1988.

With the appellants opposing the petition, the trial court proceeded to hold a hearing, which established the facts

stated above and also considered registration customs in Allegheny County.

The trial court opinion, after holding that the elections director had standing to bring the petition, correctly recited the provisions of the Act relating to the registration deadline and exceptions, expressly recognizing the statutory prohibition of registration during the thirty-day period, but then concluded:

Rather, it is obvious that where it is administratively possible to permit late registrations, the legislature would intend that this court facilitate rather than inhibit said registration.

## I.

██ Because the general election of November 8, 1988 is now in the past, a threshold matter to be considered is whether this court should decline to decide this case because of mootness. Both the department and the appellants agree that this court should decide the issue because it has wide public importance, it is recurring in nature and yet its timing aspects are such that it will evade review if the general rule excluding moot issues is followed. *Commonwealth v. Duquesne Light Co.*, 469 Pa. 415, 421–22, 366 A.2d 242, 245 (1976); *Goldsmith v. Lower Moreland School District*, 75 Pa. Commonwealth Ct. 288, 461 A.2d 1341 (1983). Because we agree, and because we conclude that the elections director had standing to bring this proceeding which relates directly to his official administrative functions, we will proceed to consider the merits.

## II.

██ The director's brief, like the trial court's opinion, offers no authority to support the validity of a judicial order granting a blanket exemption from a registration deadline fixed by law, when none of the express legislated exceptions are applicable. The Act's section 16(a) expressly excludes "the thirty days next preceding each ... election" from the times during which registration applications may

be received and implemented. The record here confirms that none of the exceptions allowable with respect to the deadline, recited above, are applicable. The provisions concerning armed forces personnel and disabled persons are not involved, and the case involves no voter who has been unable to file a removal notice or reinstatement card "due to circumstances beyond his control...." According to the record, the director, as to the 4700 unregistered voters, was not familiar with "the circumstances behind the reason for their tardiness," and he was not in a position to comment on "whether or not the circumstances behind the tardiness were beyond the individual elector's control...."

Therefore, the record confirms that the trial court's order here simply granted a mass extension of the registration deadline beyond the point fixed by statute. As the appellants' brief points out, the Pennsylvania Supreme Court, in *Schrenkeisen v. Kishbaugh*, 162 Pa. 45, 48, 29 A. 284, 285 (1894), nearly a century ago stated:

> Where a statute fixes the time within which an act must be done, as for example an appeal taken, courts have no power to extend it, or to allow the act to be done at a later day, as a matter of indulgence. Something more than mere hardship is necessary to justify an extension of time, or its equivalent, an allowance of the act nunc pro tunc....

More recently the Supreme Court, in *Commonwealth v. Lukens Steel Co.*, 402 Pa. 304, 307, 167 A.2d 142, 143 (1961), has stated:

> It is conventional law that when a controlling statute calls for things to be done within stated times they must be done so or rights fail.

With respect to statutory time limits, the Supreme Court earlier held that, "It is not within the power of courts to waive or dispense with such legislation...." *East Lake Road and Payne Ave.*, 309 Pa. 327, 163 A. 683 (1932).

The elections director has cited *In Re Moore*, 447 Pa. 526, 291 A.2d 531 (1972), and *In Re Mayor, City of Altoona, Blair County*, 413 Pa. 305, 196 A.2d 371 (1964), as support-

ing a general proposition that time limit provisions of the election laws can be treated as directory rather than mandatory. However, *Moore* treated the time limits for scheduling court hearings on objections to nominating petitions as directory, on the basis that judicial independence allows freedom from legislative strictures with respect to court administration. That opinion expressly negated the application of such flexibility to time limits imposed upon *nonjudicial* parties by stating that:

> [T]he legislature may fix a time within which ministerial acts of procedure must be performed by litigants and parties so that the court may acquire jurisdiction of the subject matter and the courts will not alter this legislative mandate.

447 Pa. at 532, 291 A.2d at 534.

The *Altoona* decision concluded that the filing deadline for substituted nomination certificates, to fill vacancies caused by the withdrawal of nominated candidates, was not binding because another section of the statute in general terms allowed candidate substitution at any time before the printing of ballots. Thus the decision actually rested upon an interpretation of conflicting language within the statute, rather than upon any general principle of flexibility as to election law deadlines.

There is no general principle of "nunc pro tunc" which authorizes courts to waive time limits set by legislation. The familiar matter of judicial allowance of the filing of late appeal, nunc pro tunc, does not rest upon mere indulgence of a tardy litigant but must be based upon a showing of fraud, or its equivalent, or a breakdown in official operation. *Estate of Purdy*, 447 Pa. 439, 291 A.2d 93 (1972); *Tarlo v. University of Pittsburgh*, 66 Pa. Commonwealth Ct. 149, 443 A.2d 879 (1982).

The trial court here understandably emphasized the importance of enabling voters to exercise their franchise as fully as possible, but we cannot assert that the legislature ignored that sound policy when it established a registration deadline, apparently striking a legislative balance between

maximum extension of the franchise and the need to allow time for accommodation of the administrative election processes.

The record here indicates that, within Allegheny County, there has been a tradition of liberality in allowing individual late registrations of voter who were delayed by circumstances beyond their control. However, a custom of liberality in granting a legislative exception is not relevant to removing a registration deadline altogether.

Neither the customs of one county, nor the ability of an efficient election department of that county to accomplish necessary administrative steps within a shorter period, can provide justification for generally extending to the voters in that county a time extension which is not uniformly assured to voters in the other sixty-six counties of the state.

Dutybound to support the statewide registration rules and exceptions established by legislation, this court must reverse the order of the trial court.

## ORDER

NOW, June 9, 1989, the order of the Court of Common Pleas of Allegheny County, dated October 31, 1988, at No. G.D. 88–16990, is reversed.